IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FRANK MONSTROLA,           )
                           )
            Plaintiff,     )
                           )
      v.                   ) Civil Action No. 07-1220
                           )
MICHAEL J. ASTRUE,         )
COMMISSIONER OF            )
SOCIAL SECURITY,           )
                           )
            Defendant.     )

MEMORANDUM JUDGMENT ORDER

AND NOW, this 9th day of March, 2009, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that plaintiff's motion for summary judgment (Document No. 8) be, and the same hereby is, granted and the Commissioner's motion for summary judgment (Document No. 11) be, and the same hereby is, denied. The Commissioner's decision of February 23, 2007, will be reversed and this case will be remanded to the Commissioner for further proceedings consistent with this opinion pursuant to sentence 4 of 42 U.S.C. §405(g).

When the Commissioner determines that a claimant is not "disabled" within the meaning of the Act, the findings leading to such a conclusion must be based upon substantial evidence. "Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citation omitted).

Despite the deference to administrative decisions required by this standard, reviewing courts "'retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner's] decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)). In evaluating whether substantial evidence supports an ALJ's findings, "'leniency [should] be shown in establishing the claimant's disability, and ... the [Commissioner's] responsibility to rebut it [should] be strictly construed ....'" Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003) (quoting Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).

Plaintiff protectively filed his applications[1] for benefits on March 29, 2005, alleging a disability onset date of September 26, 2004, due to a reattached arm, extreme shoulder, neck and back pain and left clavicle excision. His applications were denied

---

[1] For purposes of plaintiff's Title II application, the ALJ found that plaintiff met the disability insured status requirements of the Act on his alleged onset date and had acquired sufficient coverage to remain insured through December 31, 2009.

initially. At plaintiff's request, an ALJ held a hearing on September 19, 2006, at which plaintiff, represented by counsel, and a vocational expert testified. On February 23, 2007, the ALJ issued a decision finding that plaintiff is not disabled. On July 17, 2007, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 39 years old on his alleged onset date and is classified as a younger person under the regulations. 20 C.F.R. §§404.1563(c) and 416.963(c). Plaintiff has a high school education and has past relevant work experience as a laborer and railroad conductor, but he has not engaged in any substantial gainful activity since his alleged onset date.

After reviewing the medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. Although the ALJ found that plaintiff suffers from the severe impairment of residuals from injuries sustained in a vehicle accident, including left brachial plexus injury, fractures of the left scapula and clavicle, status post excision of the left clavicle, status post cervical fractures and reflex sympathetic dystrophy, those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed in Appendix 1 of the regulations.

The ALJ also found that plaintiff retains the residual functional capacity to perform work at the sedentary exertional level but with certain enumerated restrictions arising from his

impairments.[2] While concluding that plaintiff is unable to perform his past relevant work with the stated restrictions, a vocational expert did identify numerous categories of jobs which plaintiff could perform based upon his age, education, work experience and residual functional capacity, including alarm monitor, information clerk and order clerk. Relying on the vocational expert's testimony, the ALJ found that plaintiff is capable of making an adjustment to numerous jobs existing in significant numbers in the national economy. Accordingly, the ALJ determined that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(1)(B) and 1382c(a)(3)(B).

---

[2] Specifically, the ALJ found that plaintiff "has the residual functional capacity to perform sedentary work which can be performed with only the right dominant upper extremity and would allow [plaintiff] to sit or stand during the workday every 30 minutes; and would not involve more than simple, routine, repetitive tasks, performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few workplace changes." (R. 16).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[3] See 20 C.F.R. §404.1520; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). Generally, if the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff raises only a single challenge to the ALJ's finding of not disabled at step 5. Specifically, plaintiff seeks a remand of this case pursuant to SSR 00-4p based upon the ALJ's failure to identify and explain a conflict between the vocational expert's testimony and information contained in the Dictionary of Occupational Titles ("DOT") in regard to the jobs identified by the vocational expert as ones that plaintiff retains the residual functional capacity to perform. After reviewing the ALJ's decision and the record, the court agrees with plaintiff and finds that this case must be remanded to the Commissioner for compliance with SSR 00-4p.

---

[3] The ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past-relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1520 and 416.920. In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.2d at 432; 20 C.F.R. §§404.1520a and 416.920a.

AO 72
(Rev. 8/82)

SSR 00-4p requires an ALJ to identify, and obtain a reasonable explanation for, any conflict between occupational evidence provided by a vocational expert and information contained in the DOT and also to explain in his decision how any conflict that has been identified was resolved. In particular, the Third Circuit Court of Appeals has interpreted SSR 00-4p to require that "the ALJ ask the vocational expert whether any possible conflict exists between the vocational expert's testimony and the DOT," and, if the testimony does appear to conflict with the DOT, the ruling directs the ALJ "'to elicit a reasonable explanation for the conflict.'" Burns v. Barnhart, 312 F.3d 113, 127 (3d Cir. 2002). "The Ruling requires that the explanation be made on the record and that the ALJ explain in his decision how the conflict was resolved." Id.

It is clear from the record that the ALJ in this case did not comply with SSR 04-p. Although the ALJ summarily states in his decision that "the vocational expert's testimony is consistent with the information contained in the [DOT]," (R. 20), a review of the hearing transcript establishes that the ALJ did not ask the vocational expert if there was any conflict between his testimony and the information contained in the DOT or attempt to elicit an explanation for any such conflict. (R. 50-57).

Moreover, it equally is clear that significant conflicts in fact do exist in this case between the vocational expert's testimony as to the jobs identified as those that plaintiff can perform and the descriptions and classifications of those jobs as

set forth in the DOT. Here, the vocational expert identified three generic categories of jobs that plaintiff retains the residual functional capacity to perform: "alarm monitor," "information clerk" and "order clerk."

However, a review of the DOT demonstrates that there are no specific "alarm monitor" or "information clerk" jobs that an individual limited to unskilled[4], less-than-sedentary work may be able to perform. Specifically, of the four "information clerk" positions listed in the DOT, two are classified as light work and the other two carry Specific Vocational Preparation ("SVP")[5] Ratings beyond the capacity of an individual limited to unskilled work.[6] See, DOT, 237.367-022 (sedentary, SVP 4); 237.367-018 (light, SVP 2); 237.267-010 (sedentary, SVP 5); 249.467.010

---

[4] Pursuant to the regulations, unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§404.1568(a) and 416.968(a). In addition, "little specific vocational preparation and judgment are needed" and "a person can usually learn to do the job in 30 days." Id.

[5] The DOT defines SPV as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C (4th Ed., Rev. 1991).

[6] Using the skill level definitions set forth in §§ 404.1568 and 416.968, Social Security Ruling 00-4p provides that "unskilled work corresponds to an SVP of 1-2; semiskilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." Importantly, pursuant to SSR 00-4p, the regulatory definitions of skill levels are controlling, and vocational expert "evidence may not be relied upon to establish that unskilled work involves complex duties that take many months to learn, because that is inconsistent with the regulatory definition of unskilled work."

(light, SVP 5).

Likewise, although the job of "alarm monitor" is not identified in the DOT, the positions that appear to be closest to that category are described in the DOT as being beyond the capacity of an individual limited to less-than-sedentary, unskilled work. See, DOT, 376.367-010 (alarm investigator-light-SVP 3); 379.162-010 (alarm operator -sedentary-SVP 6); 379.362.014 (protective signal operator-sedentary-SVP 5).

Finally, while there is an "order clerk" position described in the DOT that is listed as sedentary with an SVP of 2, DOT 209.567-014, there also are other "order clerk" positions contained in the DOT which are classified with higher SVP ratings or exertional levels. See, e.g., DOT 245.367-026 (sedentary, SVP 3); 219.367-030 (light, SVP 4); 249.362-026 (sedentary, SVP 3).

Thus, at best, the vocational expert's testimony can be construed to encompass perhaps a single job that plaintiff arguably may be able to perform. The identification of that single job is insufficient to constitute substantial evidence to support the ALJ's step 5 finding. In light of the fact that almost all of the jobs identified by the vocational expert require skills as classified in the DOT beyond plaintiff's capacity for sedentary, unskilled work, the ALJ's step 5 finding cannot stand absent an explanation from the vocational expert as to the conflict between his testimony and the information in the DOT.

While it is true, as the Commissioner points out, that an unexplained conflict between the DOT and the vocational expert

does not necessarily require a remand, see, e.g., Rutherford v. Barnhart, 399 F.3d 546, 558 (3d. Cir. 2005)(vocational testimony provided substantial evidence for ALJ's step 5 finding despite minor inconsistencies between that testimony and DOT); Jones v. Barnhart, 364 F.3d 501, 506 (3rd Cir. 2004) (substantial evidence supported step 5 determination despite inconsistencies between vocational expert testimony and DOT where inconsistencies did not exist as to all of the jobs identified by the vocational expert and the vocational expert testified that listed jobs were just examples, not an exhaustive list), the court believes that the conflict in this case goes well beyond the "minor inconsistencies" present in Rutherford and Jones.

Here, two of the three generic categories of jobs identified by the vocational expert are categorized by the DOT, either as to exertional level or skill level, as being beyond the ability of an individual with plaintiff's residual functional capacity, and the third generic category identified by the vocational expert encompasses positions that both may or may not be within plaintiff's capacity to perform. This precise sort of conflict is what SSR 00-4p was designed to address.

On remand, the ALJ must comply with SSR 00-4p by specifically asking the vocational expert about any conflict existing between his testimony and the information contained in the DOT and by eliciting a reasonable explanation for any such conflict. The ALJ must then explain in his decision how the conflict was resolved.

AO 72
(Rev. 8/82)

For the foregoing reasons, plaintiff's motion for summary judgment will be granted, the Commissioner's motion for summary judgment will be denied, and this case will be remanded to the Commissioner for further proceedings consistent with this opinion.

*Gustave Diamond*
Gustave Diamond
United States District Judge

cc: Karl E. Osterhout, Esq.
1789 South Braddock Avenue
Suite 570
Pittsburgh, PA 15218

Lee Karl
Assistant U.S. Attorney
U.S. Post Office & Courthouse
700 Grant Street, Suite 400
Pittsburgh, PA 15219